Nicholas Ranallo, Attorney at Law (SBN #275016)
371 Dogwood Way
Boulder Creek, CA 95006
Phone: (831) 703-4011
Fax: (831) 533-5073
nick@ranallolawoffice.com
Attorney for ISP Subscriber
(IP Address 174.66.128.247)

Brett L. Gibbs, Esq. (SBN 215000)
Of Counsel to Prenda Law Inc.
38 Miller avenue, #263
Mill Valley, CA  94941
415-325-5900
blgibbs@wefightpiracy.com

*Attorney for Plaintiff,*
*Pacific Century International, Ltd..*

# UNITED STATES DISTRICT COURT FOR THE

# EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| PACIFIC CENTURY INTL., LTD. | ) | Case No.: 2:11-CV-03479-KJM-JFM |
| | ) | |
| Plaintiff, | ) | Magistrate Judge John F. Moulds |
| | ) | |
| vs. | ) | Hearing Date: June 21, 2012 |
| | ) | |
| JOHN DOE, | ) | JOINT STATEMENT RE: DISCOVERY |
| Defendant | ) | DISAGREEMENT |
| | ) | |
| | ) | |

Movant, the account-holder associated with alleged "co-conspirator" IP address 174.66.128.247, through undersigned counsel, hereby submits this Joint Statement re: Discovery Disagreement in advance of the June 21, 2012 hearing on Movant's request for a Protective Order, and Plaintiff's Response in Opposition to such.

## I.  Details of the Parties Discovery Conferences

Plaintiff and Movant have engaged in two telephonic meet and confer sessions with regard to the instant motion in an attempt to resolve the discovery disputes.  Specifically, counsel for Movant and Plaintiff spoke on or around May 18, 2012, prior to the filing of the instant motion for a protective order (and two functionally identical motions also pending before this court).  In addition, counsel for Movant and Plaintiff spoke again on June 13, 2012, regarding the discovery dispute and the instant Joint Statement.

Due to the nature of the discovery disagreement, the circumstances of this case and the irreconcilable differences between the Movant and Plaintiff regarding the propriety of the discovery, as described more fully below, the respective parties were unable to resolve this disagreement without court intervention.

## II.  A Statement of the Nature of the Case

Plaintiff herein is the purported owner of the adult work that is the subject of this action. Defendant herein is a particular unidentified "John Doe" that allegedly downloaded Plaintiff's work on November 22, 2011.  In addition to John Doe, this suit alludes to (but does not presently include) approximately 120 alleged "co-conspirators," including Movant herein.  Each co-conspirator is accused of downloading Plaintiff's copyrighted work sometime between November 9, 2011 (13 days prior to John Doe's download) and December 13, 2011 (21 days after John Doe's download).   According to Plaintiff, the purpose of requesting the identifying information on these alleged co-conspirators is three-fold: (1) Plaintiff, first and primarily, needs this information to calculate the damages that John Doe has caused it in this case, (2) to establish who these individuals are, contact them, and from there establish their involvement with John Doe in this case, and (3) to establish whether these individuals in fact were in a conspiracy with John Doe, and add those that were as defendants.

The instant complaint was filed on December 30, 2011.  An Amended Complaint was filed on January 5, 2012, alleging copyright infringement against John Doe and alluding to various "co-conspirators" as described above.  On January 12, 2012, Plaintiff applied to this Court for an Ex Parte Application for early discovery, requesting the names and identifying

information associated with John Doe and each of the "co-conspirators" who are alluded to in the complaint.  In support of its application, Plaintiff submitted the declaration of Peter Hansmeier, who is identified as a technician for Media Copyright Group, LLC (MCG).

On January 19, 2012, this Court granted Plaintiff leave to pursue the requested discovery and ordered, inter alia, that:

> "4.   Subscribers **shall have thirty (30) days** from the date of notice of the subpoena upon them **to file any motions in this court to contest the subpoena**.  If the thirty-day period lapses without a contest, the ISPs will have (10) days thereafter to produce the information responsive to the subpoena to Plaintiff." (Doc. 9, #4)(emphasis added).

A copy of this court's order is annexed hereto as Exhibit A.

One ISP, Comcast, objected to the subpoena issued in this case (along with five other cases involving similar subject matter).  On March 30, 2012, the District Court for the Northern District of Illinois issued an order quashing the subpoena in the instant case to the extent that it sought information from Comcast subscribers (Case No. 12 C 1057, et. al., N.D. Ill. March 30, 2012, Docket No. 23)(annexed hereto as Exhibit B.)

Some ISPs, however, did not challenge the Court's order.  Unlike Comcast, Movant's ISP has apparently not objected to producing Movant's personal information.  Instead Cox Communications, through Neustar, mailed a letter to the Movant dated May 8, 2012, which was received by Movant on Friday, May 10, 2012.  According to Movant, he was provided with only approximately 13 days to respond to Cox's letter, rather than the thirty that are required by this court's order. Movant now files its Motion for a Protective Order.

### III.  The Contention of Each Party as to Each Contested Issue

#### 1.  Standing

**Movant's Position:**

Plaintiff first argues that Movant herein does not have standing to challenge the instant subpoena via a motion for a protective order.  This argument is faulty for a number of reasons and simply seeks to deprive the subpoenaed individuals of any opportunity to challenge the falsehoods and

misstatements contained in Plaintiff's Ex Parte Application.  For the reasons outlined below, Plaintiff's argument must be rejected.

First, as noted in the original motion, a party has standing to challenge a subpoena issued to the third party when the party has a personal or proprietary interest in the information sought by the subpoena.  *See Washington v. Thurgood Marshall Acad.,* 230 F.R.D. 18, 21 (D.D.C. 2005).  Movant herein has a personal or proprietary interest in his address, phone number, email address, and the other identifying details sought by Plaintiff.  Indeed, Congress has specifically recognized that ISP subscribers have a privacy interest in the personally identifying information kept by ISPs, and explicitly stated the same in the H.R. 98-934 at *79 (The Congress is recognizing a right of privacy in personally identifying information collected and held by a cable company...").  Indeed, 47 U.S.C. §551 specifically requires that an ISP subscriber be notified and given a chance to intervene before his identifying information is released to Plaintiff herein. This process obviously makes no sense if a subscriber lacks standing to bring any motions to prevent the release of his information.

Plaintiff claims that the "plain language" Rule 26 prevents the issuance of a protective order because the requested discovery is not sought directly from the Movant and because Movant is not a party.  Plaintiff's reliance on the "plain language" of the Federal Rules is interesting, given that the plain language of the Federal Rules would also seem to prohibit the instant "Doe" action filed by Plaintiff (Fed. R. Civ. P. 10(a) ("the title of the action should include the names of all parties."))  Plaintiff has not cited any case law that supports his interpretation of Rule 26 and Plaintiff's position is directly contrary to the position taken by other federal courts in this state.

For example, in *Coulter v. Murrell,* the Southern District of California confronted an exactly analogous situation.  In that case, Ms. Shelly, a non-party, sought a protective order preventing the release of various records regarding her late husband that were being sought from a local hospital.  Ms. Shelly was neither a party, nor the individual from whom the records were sought, and Plaintiff argued that Ms. Shelly therefore lacked standing.  The court rejected this

argument and granted a protective order preventing the release of the requested information.  In doing so, the court noted specifically that

> " Even if Ms. Shelly lacked standing to bring a motion to quash [Plaintiff's] subpoenas, she has alternatively sought a protective order.  This is a remedy that is available to 'any person' who is able to establish good cause for issuance of the protective order 'to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense...'"

*Coulter v. Murrel,* 2011 WL 666894 at *3-4 (S.D. Cal. 2011).

The Northern District has likewise recognized that a "Doe" defendant has standing to bring a motion for a protective order seeking to prevent the release of his identity.  In fact, in *IO Group v. Does 1-19,*(a BitTorrent case like the instant) the court sua sponte converted a Doe's motion to quash a subpoena issued from another district to a motion for a protective order in order to properly address the merits of the Doe's argument.  *IO Group v. Does,* 2010 WL 5071605 at *2 (N.D. Cal. 2010)("for purposes of judicial economy and in light of Doe #4's consent to this forum – at least for purposes of determining his pending motions – the Court will consider Doe #4's motion as one for a protective order.")  See also *Wells v. GC Services LP* 2007 WL 1068222 at *1(N.D. Cal. 2007)("Federal Rule of Civil Procedure 45 allocates authority over subpoenas to the court for the district from which they are issued...However, this court could properly address a motion for a protective order, and this court has the right to define the scope of discovery...Therefore, the court deems Plaintiff's motion to be  a motion for a protective order...")

Plaintiff's argument regarding standing is even more astounding given the history of the instant matter.  This court's Order authorizing expedited discovery specifically provides that "Subscribers shall have thirty (30) days from the date of notice of the subpoena upon them **to file any motions in this court to contest the subpoena**."  This is the exact language proposed by Plaintiff's proposed order, which was signed without amendment.  According to Plaintiff's theory, a subscriber therefore is explicitly granted 30 days to contest the subpoena in this court, but any attempt by a subscriber to seek a protective order should be dismissed because the

subscriber does not have standing.  Further, Plaintiff's Response to an anonymous movant's Motion to Quash (Docket 18) ALSO argues that Movant lacks standing to bring a motion to quash.  (Doc. 18, at 2).  Thus, according to Plaintiff, a subscriber shall have thirty days to file any motions in this court contesting the subpoena, but that ANY motion filed pursuant to this order should be dismissed because an ISP subscriber lacks standing to bring the motion.  This is nonsensical and, conveniently for Plaintiff, deprives subscribers of any opportunity to contest Plaintiff's unsupported allegations.

It is well established that discovery in a civil case may be regulated and controlled by the court in which the case is filed.  See, *Straily v. UBS Fin. Servs., Inc.*, No. 07-cv-884-REB-KMT, 2008 WL 5378148, at *2 (D. Colo. Dec. 23, 2008).  See Also *Static Control Components, Inc. v. Darkprint Imaging*, 201 F.R.D. 431, 434 (M.D.N.C. 2001) (district where case was pending had authority to issue protective order, pursuant to its right to control general outline of discovery, even though the particular discovery dispute arose from subpoena issued in another district) (citing *Fincher v. Keller Indus., Inc.*, 129 F.R.D. 123, 125 (M.D.N.C. 1990)); *Rajala v. McGuire Woods, LLP* 2010 WL 4683979 at *5 (D. Kan. 2010)("the Court finds the *Straily* and *Static Control* decisions to be well reasoned and reflective of the majority view"); *Best Western Inc. v. Doe,* 2006 WL 2091695 (D. Ariz. 2006)("Rule 45(c) does provide that subpoenas should be enforced by the district court which issued them, but this rule does not alter the broader concept that the district court in which an action is pending has the right and responsibility to control the broad outline of discovery.  General discovery issues should receive uniform treatment throughout the litigation, regardless of where the discovery is pursued")(internal quotes and citations omitted").

This court has the authority and obligation to control discovery in the underlying action. In furtherance of this authority, the court herein has ordered that ISP subscribers shall have 30 days to contest the subpoena in this court.  Even if Movant were generally prohibited from seeking a protective order by the language of Rule 26 (which he is not, as shown above), this court's discovery order nonetheless confers standing on Movant to challenge the subpoenas issued in accordance with the order.

**Plaintiff's Response:**

The plain language of Federal Rule of Civil Procedure 26 limits the scope of who may move for a protective order. *See* Fed. R. Civ. P. 26(c) ("A *party* or any *person from whom discovery is sought* may move for a protective order …..") (emphasis added). Movant is not a party to this case. *Fed. Sav. & Loans Ins. Corp. v. Tullos-Pierremont*, 894 F.2d 1469, 1474-75 (5th Cir. 1990) (under common law, unserved parties are nonparties). Movant is not even the John Doe defendant in this case. (ECF No. 1-1 at 2) (listing John Doe's IP address as 76.114.33.61). Nor is Movant an entity from whom discovery is sought. The subpoenas in this matter were issued to Internet Service Providers, not Movant. While there are procedures that would allow Movant to challenge the disclosure of his identifying information, a protective order is not one of them under the circumstances of this case.

**2.     RELEVANCE**

**Movant's Position:**

"The foremost fundamental principal regarding subpoenaed discovery is that a subpoena duces tecum to obtain materials in advance of trial should be issued only when the party seeking the materials can show that the materials are evidentiary and relevant." *Straily v. UBS Fin. Servs., Inc.,* 2008 WL 5378148, at \*1. Indeed, Rule 26(b) specifically states that "Parties may obtain discovery regarding any nonprivileged matter that is relevant…" Fed. R. Civ. P. 26(b). Although relevance, as used in Rule 26 is broad, it is not limitless.  Plaintiff's requested discovery seeks to discover the identities of individuals that lack any connection whatsoever to the single John Doe that is being sued in the instant matter.

Movant, and approximately 120 other unrelated individuals are referred throughout Plaintiff's filings as John Doe's "Co-Conspirators."  Plaintiff has not alleged that Movant ever interacted with John Doe at any point to share the allegedly copyrighted work that is the subject of this action.  Indeed, there is also no allegation that any particular "co-conspirators" connected to each other and shared the work.  Simply calling an individual a co-conspirator should not suffice to create a relationship where one would not otherwise exist.

The plaintiff's request for identical co-conspirator discovery was denied for this reason in two *First Time Video, LLC v. Unknown* cases in this district (Nos. 2:11-cv-03478 and 2:12-cv-00621), which also involved Plaintiff's counsel herein.   After a detailed discussion of the appropriate standards for early discovery, the court held that Plaintiff

> …has not shown good cause to conduct expedited discovery regarding John Doe's alleged co-conspirators, whom plaintiff has not alleged as defendants in the amended complaint (naming only one doe defendant, John Doe, and asserting the plaintiff will "seek leave of the court to amend this complaint to joining John Doe's co-conspirators as defendants"…[B]ecause plaintiff's complaint does not purport to sue John Doe's alleged "co-conspirators" at this time, in light of the potential that some of the alleged co-conspirators are innocent internet users, plaintiff has not shown that the need to discovery their identities at this early stage outweighs the prejudice to those individuals, or that the request to subpoena all of those individuals' ISPs is reasonable at this time, in light of all the surrounding circumstances."

*First Time Videos, LLC v. Doe*  No. 2:11-cv-3478-GEB-EFD (Doc. 9) at 5-6, 2012 WL 170167, at *3.  See also *First Time Videos, LLC. v. Doe,* No. 2:12-cv-00621 (Doc. 8, filed April 18, 2012).

In particular, the court noted that Paragraph 27 of the Hansmeier Declaration in Support of Ex Parte Discovery (which was identical to ¶27 of the Hansmeier Declaration in the instant case) stated only that the declarant personally observed John Doe's IP address participating in a swarm that the alleged co-conspirators also joined at some other time.  The court was particularly concerned with the fact that, like here, Plaintiff could only alleged that "any (or all of the) individual IP address(es) listed on Exhibit A of the Amended Complaint ***could have*** aided John Doe." (Doc 1-1 at ¶ 27)(emphasis added).  Plaintiff's technician offers no hint that any particular "co-conspirator" actually did connect with John Doe, only that they *could have*.  As in, it is not technically impossible (despite the clear evidence that Movant, and most other co-conspirators, allegedly downloaded the work weeks apart from John Doe)[1].  What Mr. Hansmeier fails to

---

[1]  In addition to the problems identified above, the Hansmeier declaration apparently contains additional false and/or misleading statements that undermine the declarant's reliability and call into question the entirety of his declaration.  Mr. Hansmeier purportedly executed the declaration on January 12, 2012, which specifically states that he "is employed" as a technician at Media Copyright Group, and proceeds to discuss his activities at MCG as present and ongoing.  However, Media Copyright Group was apparently dissolved in December of 2011, prior to the execution of the instant declaration.  See screenshot from MN Secretary of State's business filings website, annexed hereto as Exhibit F, and available at http://mblsportal.sos.state.mn.us/Business/SearchDetails/3887282-2?status=Inactive&itemType=Limited%20Liability%20Company%20(Domestic)

mention is that it is also possible that *none* of the "co-conspirators" ever connected to John Doe, or that *countless* other individuals, who are not identified as co-conspirators, could have connected to John Doe to provide or receive Plaintiff's work.

Examining the evidence in support of Plaintiff's discovery request, makes it appear exceedingly unlikely, in fact, that Movant, (or the majority of "co-conspirators" chosen for this case), ever interacted in any way with John Doe or with each other.  For example, Plaintiff alleges that John Doe was observed in a swarm sharing Plaintiff's work on November 22, 2012.  Movant herein, on the other hand, is alleged to have participated in the swarm on November 29, 2012, a full week after John Doe was observed.  Other "co-conspirators" are alleged to have been observed from as early as November 9th, and as late as December 13th.  Plaintiff glosses over the obvious problems with this and makes no attempt to show any chain of interaction or distribution, from co-conspirator 1, for example, to John Doe, or from John Doe to subsequent "co-conspirators."

In its opposition, Plaintiff makes no attempt to dispute this fact, or to show that Movant actually interacted with the Doe Defendant in any manner.  Instead, Plaintiff's opposition states

> "Movant makes several arguments on the merits stating that John Doe and his co-conspirators did not interact with one another.  These arguments are premature and should be raised only if and when Movant is named and served in this case.  The legal merits of the case have nothing to do with whether or not Plaintiff's subpoena causes "annoyance, embarrassment, oppression, or undue burden or expense as required by Rule 26(c)" (Doc. 19 at pg. 5).

First, Plaintiff mischaracterizes Movant's argument as relating to the "merits" of his claim against John Doe and/or the requirements of Rule 26, rather than the relevance of the requested discovery.  Second, Plaintiff simply asserts that by characterizing the argument in this way it is premature to consider whether the John Doe actually connected to any co-conspirator herein ever connected to John Doe.  Finally, Plaintiff would have you believe that the fact that

---

The declarant's failure to disclose the dissolution of MCG and misstatements regarding his present employment at MCG lead to the conclusion that Mr. Hansmeier either (a) never read the instant declaration, to which his signature is affixed, or (b)does not highly regard his duty of candor to the court.  Mr. Hansmeier is identified on the attached filing as the manager of MCG, and it seems inconceivable that he was unaware of its demise when the instant declaration was filed.  The Hansmeier declaration contains no discussion of the chain of custody for the sole evidence underlying this suit, the present custodian of such evidence, or any other information to support its reliability.

the underlying action has no merit is irrelevant to whether the discovery requested in connection with that action would subject one to annoyance, embarrassment, or undue burden.

The response above is telling.  Obviously, Plaintiff is unable to provide any support for the proposition that John Doe actually connected to Movant herein, and has not tried to do so. Plaintiff is well aware that the evidence actually shows the Movant's IP address in the swarm a full week after John Doe.  Moreover, Plaintiff cannot plausibly argue that the name, addresses, and telephone numbers of individuals that never interacted with John Doe in any manner are relevant to this action against John Doe.  Instead, Plaintiff has chosen a third course, and the only one available to it.  Plaintiff therefore begs this court to pay no attention to the fact that Plaintiff's own evidence shows that Movant and John Doe did not interact.

Plaintiff's remaining arguments supporting the relevance of its requested discovery are likewise unpersuasive.  Plaintiff asserts that without the identifying information of alleged co-conspirators, "Plaintiff will have no means of computing the damages" from John Doe's infringement.  Plaintiff offers no hint as to how these damages would be computed, and its selection of "Co-Conspirators" makes it clear that Plaintiff's motive for discovery has nothing to do with "computing damages."  As noted above, Plaintiff has not alleged (and presumably has no basis to allege) that Movant has ever interacted with John Doe, either to provide John Doe with a file or to receive a file from John Doe.  It seems quite unlikely then that the identifying information of Movant is therefore necessary to compute damages attributed to the allegations against John Doe.

It is also instructive to ask who <u>has not</u> been included as a "co-conspirator" in the instant suit – namely anyone that resides outside of California.  The swarm that John Doe allegedly participated in almost certainly included individuals from various states in the U.S. and perhaps many countries worldwide.  Nowhere has Plaintiff alleged that the swarm sharing Plaintiff's file only included the California residents chosen as "co-conspirators" for this suit.  Indeed, as Plaintiff's complaint alleges, "A swarm will commonly have peers from many, if not every, state in the United States and several countries around the world…" (Doc.1 at ¶15).  Thus, it is extremely likely that the majority of participants in the chosen swarm will not be identified by

the requested discovery and it is also extremely likely that the individuals that John Doe *actually* connected with are not listed as "co-conspirators" in the instant suit.

Obviously, a true computation of the damages attributed to John Doe (if that's what Plaintiff wanted) would require the inclusion of those individuals that actually connected to John Doe to share the work, whether or not they lived in California. A true computation of damages would likewise require the exclusion of individuals, like Movant, that likely never interacted with John Doe. Instead, Plaintiff has selected a random group of California residents that are alleged only to have downloaded the same work in the same way (though not necessarily from each other), and chosen to label them co-conspirators.

The Southern District of California issued an order on May 21, 2012, (the same date as Movant's motion), in which it examined an Ex Parte Application by Mr. Gibbs that provided precisely the same rationales for discovery as those posited herein. In denying Plaintiff's request, the Court noted the following:

> "Plaintiff claims that there is a substantial need for the expedited discovery because damages cannot be established against Defendant without gathering evidence of and from individuals with the IP addresses listed in Exhibit A. "Without determining these identities Plaintiff will have no means of computing the damages that can be attributed to [Defendant's] infringing activities. When this information is erased, Plaintiff will have no ability to identify [Defendant's] joint tortfeasors, and thus will be unable to determine damages related to its copyright infringement claims." But, while Plaintiff's Ex Parte Application stresses the need for this information in order to assess damages, the Court is left puzzled by the obvious – an explanation regarding why the identities of the IP subscribers are necessary to assess damages when the extent of the alleged infringing activity is captured in full in Exhibit A. Plaintiff fails to adequately explain, or even attempt to explain, its reasoning and the Court is left to make that connection on its own, and is unable to do so...If Plaintiff's true reason for requesting expedited discovery is to assess damages, the Court finds that the thousands of IP addresses, complete with dates and times of each alleged copyright infringement activity, should be sufficient to calculate such damages. The Court is at a loss to understand how names, addresses, phone numbers and email addresses connected to each IP address listed in Exhibit A could possibly assist Plaintiff in a computation of damages against Defendant."

*Millenium TGA, Inc. v. Paschall,* 2012 WL 1836331 at * 1-2 (S.D. Cal. May 21, 2012).

The Southern District's analysis applies equally to Plaintiff's other justification, that the identity of Movant is necessary to establish contributory liability against John Doe. A cause of action for contributory infringement against John Doe requires that John Doe "with knowledge of the infringing activity, induces, causes, or materially contributes to the infringing conduct of another." See, e.g. *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.,* 443 F.2d 1159, 1162 (2d Cir. 1971). Two aspects of this definition are important. First, there is no requirement that Plaintiff identify specific individuals that were allegedly on the "receiving end" of John Doe's contributory infringement. Plaintiff must only establish that there were additional infringements "by another." This does not require the Movant's address, phone number, email address, or any of the other requested information. Indeed, if Plaintiff's proffered evidence is to be believed, it already has evidence of the infringements - just does not the identity of the infringers.

The second (extremely important) component of contributory infringement is that John Doe must have induced, caused, or materially contributed to the infringing conduct of another. Since Plaintiff is totally unable to even *allege* that Movant interacted with John Doe at any time, Plaintiff cannot seek to base John Doe's contributory infringement on an alleged direct infringement by Movant. As such, this justification for the relevance of the requested discovery must also be dismissed.

Plaintiff finally attempts to justify its inclusion of approximately 120 alleged co-conspirators by including a single sentence in the Amended Complaint that "Plaintiff intends to seek leave of the Court to amend this complaint to join John Doe's co-conspirators as defendants in this action pursuant to Fed. R. Civ. P. 20(a)(2)." (Doc. 6 at ¶ 44). Although this hints at the true reason for the Amended Complaint's "co-conspirators," it doesn't tell the entire story.

The simple fact is that the complaint's structure (single John Doe + co-conspirators) is the result of multiple District Courts rejecting exactly the type of joinder that plaintiff refers in support of its discovery request. A look at *Millennium TGA, Inc v. Does 1-939* is particularly instructive.

On December 7, 2012, Prenda Law, Inc. filed *Millennium TGA v. Does 1-939,* No. 1:11-cv-2176-RLW (D.D.C.) in the District of Colombia, alleging copyright infringement against 939 John Does identified by IP address.  This case was voluntarily dismissed by the Plaintiff after it was assigned to Judge Wilkins, who had previously denied a Plaintiff's motion to engage in identical ISP discovery in *Nu Image, Inc. v. Does 1-23,* 799 F.Supp.2d 34 (D.D.C. 2011).  After this "voluntary" dismissal, Plaintiff subsequently refiled essentially the same complaint against the same 939 IP addresses in the Southern District of Texas, with one instructive difference.  In *Millennium TGA, Inc., v. John Doe,* No. 4:11-cv-4501-VG (S.D. Tex, filed Dec. 20, 2012) Plaintiff ostensibly filed suit against a single John Doe, and identified the remaining 938 IP addresses as co-conspirators, as Plaintiff has done in the instant case.  *These were the exact same individuals, though now they are "co-conspirators"* and Plaintiff forwarded substantially the same arguments justifying co-conspirator discovery as they have here.

As above, the complaint in the instant case is a transparent attempt to harvest vast numbers of ISP subscriber identities without having to deal with the issue of joinder – an issue that has led to the dismissal of literally thousands of Doe Defendants throughout the country in similar BitTorrent litigation.[2]

In addition to the multitude of cited decisions rejecting joinder of individuals based solely on the allegation that they downloaded the same work from the same swarm, one decision from the District of Arizona is particularly instructive.  In *Patrick Collins v. Does 1-54*, No. 2:11-cv-01602; 2012 WL 911432  (D. Ariz. 2012), a BitTorrent copyright case like the instant matter, the court faced a situation where only two defendants remained in the action.  The court, after a

---

[2]  See, e.g. *SBO Pictures, Inc. v. Does 1-3036*, 2011 WL 6002620 (N.D. Cal. Nov. 30, 2011)(dismissing all but Doe 1); *AF Holdings LLC v. Does 1-97*, 2011 WL 2912909 (N.D. Cal. July 20, 2011) (same*); Pac. Century Int'l Ltd. v. Does 1-101*, 2011 WL 2690142 (N.D. Cal. July 8,2011) (same). In re: BitTorrent Adult Film Copyright Infringement Cases, No. 2:11-cv-3995-DRH-GRB (E.D.N.Y. May 1, 2012); *Liberty Media Holdings, LLC v. BitTorrent Swarm*, 277 F.R.D. 672 (S.D. Fla. 2011) (severing defendants); *Liberty Media Holdings, LLC v. BitTorrent Swarm*, 277 F.D.R. 669 (S.D. Fla. 2011) (severing defendants); *Raw Films, Inc. v. Does 1-32*, No. 1:11-CV-2939, slip op., 2011 WL 6840590 (N.D. Ga. Dec. 29, 2011) (order severing defendants); *Patrick Collins, Inc. v. Does 1-35*, No. 1:11-CV-02940 (N.D. Ga. Dec. 19, 2011) (order severing defendants); *K-Beech, Inc. v. Does 1-63*, No. 1:11-CV-2941-CAP (N.D. Ga. Dec. 5, 2011) (order severing defendants); Third Degree Films v. Does 1-3577, No. C11-02768 LB, slip op., 2011 WL 5374569 (N.D. Cal. Nov. 4, 2011); *Hard Drive Productions, Inc. v. Does 1-30*, No. 2:11-CV-345, slip op., 2011 WL 4915551 (E.D. Va. Oct. 17, 2011) (severing defendants*); K-Beech, Inc. v. Does 1-78*, No. 5:11-CV-05060 (E.D. Penn. Oct. 3, 2011) (order severing defendants).

thorough discussion of the joinder rules, determined that <u>the joinder of even two individuals</u> <u>based solely on the allegation that they participated in the same swarm was improper.</u>  The court's reasoning is persuasive.  It stated that:

> "Plaintiff alleges that the two remaining Defendants 'participat[ed] in a BitTorrent swarm with other infringers' but does not claim that John Doe 6 provided data to the former John Doe 12, or vice versa.  Plaintiff included as Defendants only those IP addresses from the swarm in question that were located in Arizona, demonstrating that the actions of the individual members of the swarm are easily distinguishable.  Plaintiff alleges no facts that these two particular Defendants shared data with each other, and provides data instead that they were logged on to BitTorrent weeks apart."

*Patrick Collins, Inc. v. Does 1-54,* 2012 WL 911432 at *5 (D. Ariz. 2012).  In accordance with this reasoning, the court held that "Plaintiff has not demonstrated that John Doe 6 and the former John Doe 12 engaged in a single transaction or occurrence..." and therefore severed John Doe 6. (Id.).  As the foregoing examples illustrate, it is very unlikely that Plaintiff will ever successfully join multiple parties in this suit, and the simple statement that it will seek leave to do so is not sufficient to make the identities of Movant (or other "co-conspirators") relevant to the instant matter.


**Plaintiff's Response:**

Even if Movant was eligible to move for a protective order, he must still establish good cause. Fed. R. Civ. P. 26(c). This is a near-impossible task under these circumstances because Movant is neither subject to Plaintiff's subpoenas nor required to do *anything* in response to them. He therefore cannot articulate any plausible, "annoyance, embarrassment, oppression, or undue burden or expense" from any of Plaintiff's discovery requests. *See Voltage Pictures, LLC v. Does 1–5,000*, No. 10-0873, 2011 WL 1807438, at *4 (D.D.C. May 12, 2011) (denying motions for protective orders from thirty-five anonymous movants); *MCGIP, LLC v. Does 1–14*, No. 11-2887 (N.D. Ill. July 26, 2011), ECF No. 19 (finding that movants had "failed to show good cause" for an order under Fed. R. Civ. P. 26(c)(1)). Movant's request for a protective order fails on all possible explicit grounds.

To the extent that Movant's request invokes the implicit issue of privacy, it must also fail. A person who uses the Internet to download or distribute copyrighted works without permission is engaging in the exercise of speech, but only to a limited extent, and the First Amendment does not protect that person's identity from disclosure. *See, e.g.*, *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 118–19 (2d Cir. 2010) (concluding that plaintiff's need for discovery of alleged infringer's identity outweighed defendant's First Amendment right to anonymity); *Arista Records, LLC v. Does 1–19*, 551 F. Supp. 2d 1, 8 (D.D.C. 2008) ("[C]ourts have routinely held that a defendant's First Amendment privacy interests are exceedingly small where the 'speech' is the alleged infringement of copyrights."); *Sony Music Entm't, Inc. v. Does 1–40*, 326 F. Supp. 2d 556, 558 (S.D.N.Y. 2004). Movant cannot cloak his identity in the First Amendment when his infringing activities are not private. *MCGIP, LLC v. Does 1–18*, No. 11-1495, 2011 WL 2181620, at *1 (N.D. Cal. June 2, 2011) ("[I]t is difficult to say that Doe had a strong expectation of privacy because he or she either opened his or her computer to others through file sharing or allowed another person to do so."); *see also Voltage Pictures*, 2011 WL 1807438 at *4 (finding movants' rights to anonymity to be minimal).

Movant requests the Court to reconsider its January 19 order (ECF No. 17) and argues that "the court erred in finding that Plaintiff had demonstrated good cause to obtain expedited discovery of Movant's personal information." (ECF No. 17-1 at 7.) This is a bold request that is granted only in extreme circumstances. *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999) (explaining that a motion for reconsideration "should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law.") The overwhelming majority of district courts, including courts in this district, presented with similar

applications, have granted similar discovery requests. *See e.g.*, *CP Productions, Inc. v. John Doe*, No. 12-00616 (E.D. Cal. Mar. 19, 2012), ECF No. 9 (granting discovery for the identifying information of John Doe and his joint tortfeasors); *Millennium TGA, Inc. v. John Doe*, No. 11-4501 (S.D. Tex. Feb. 9, 2012), ECF No. 6 (same); *First Time Videos LLC v. John Doe*, No. 11-00690 (E.D. Va. Jan. 9, 2012), ECF No. 8 (same). Movant is not allowed to move for reconsideration of a decision simply because he disagrees with the outcome. *See Nunes v. Ashcroft*, 375 F.3d 805, 810 (9th Cir. 2003) Here, the Court's decision was consistent with the majority view on this issue. Reconsideration certainly is not warranted.

Movant argues that the information Plaintiff seeks is not relevant to this case. (ECF No. 17-1 at 9-14.) This argument is wrong. The purpose of seeking the Doe Defendant's joint tortfeasors' identities is, *inter alia*, to establish contributory liability against the Doe Defendant and any later-joined parties for the infringing acts of the joint tortfeasors. *See Sony v. Universal City Studios, Inc.,* 464 U.S. 417, 435 (1984) ("[T]he concept of contributory infringement is merely a species of the broader problem of identifying the circumstances in which it is just to hold one individual accountable for the actions of another.")  In order to prove contributory infringement against a Doe Defendant and any later-joined parties, a plaintiff must prove underlying direct infringements. *Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 846 (11th Cir. 1990) ("Contributory infringement necessarily must follow a finding of direct or primary infringement.")

Just as it is necessary to ascertain the Defendant's identity in order to prove his direct infringement, so too is it necessary to ascertain the joint tortfeasors' identities to prove their direct infringement. *Id.* Plaintiff will have no means of seeking information from a joint tortfeasor, examining digital forensic evidence or assessing the range of possible defenses that a

joint tortfeasor might raise without first knowing who he is. *See, e.g.*, *First Time Videos LLC v. John Doe*, No. 11-00690 (E.D. Va. Jan. 4, 2012), ECF No. 7 at 4 ("Further, without these identities Plaintiff will have no means of computing the damages that can be attributed to the conspiracy or establishing testimony from coconspirators to aid in proving liability against John Doe and any co conspirators who are later joined to this action.") This, of course, is only one of many grounds for establishing the relevance of the joint tortfeasors' identities to Plaintiff's claims. For example, a plaintiff would have no sense of the extent of damages caused by a joint tortfeasor's infringement unless it had an opportunity to examine digital forensic evidence that is in the sole possession of that individual.

Contributory infringement is a plausible legal theory in BitTorrent-based copyright infringement cases. Courts have already ruled that using BitTorrent to commit copyright infringement triggers contributory infringement liability. *Raw Films, Ltd. v. John Does 1-11*, No. 12cv368-WQH (NLS), 2012 WL 684763, at *2 (S.D. Cal. Mar. 2, 2012) ("Plaintiff's allegation that each defendant was willingly and knowingly a part of the 'swarm' for purposes of the infringing conduct supports Plaintiff's claim of contributory infringement."); *Liberty Media Holdings, LLC v. Does 1-62*, No. 11-CV-575, 2011 WL 6934460, at *1 (S.D. Cal. Dec. 30, 2011) ("Defendant's conduct constitutes contributory infringement of Plaintiff's copyright in addition to direct infringement under 17 U.S.C. § 501."); *Liberty Media Holdings, LLC v. Swarm of November 16, 2010, Sharing Hash File A3E6F65F2E3D672400A5908F64ED55B66A0880B8*, No. 11-619, 2011 WL 1597495, at *3 (S.D. Cal. Apr. 26, 2011) ("Plaintiff has alleged the prima facie elements of both direct and contributory copyright infringement . . . .").

Movant makes several arguments on the merits stating that John Doe and his co-conspirators did not interact with one another. (ECF No. 17-1 at 9-10, 13-14.) These arguments are premature and should be raised only if and when Movant is named and served in this case. The legal merits of the case have nothing to do with whether or not Plaintiff's subpoena causes "annoyance, embarrassment, oppression, or undue burden or expense" as required by Rule 26(c).

**3.  Capability of Identifying the Infringer of Plaintiff's Copyright Via the Requested Discovery**

**Movant's Position:**

It is becoming accepted wisdom in District Courts across the country that an IP address does not equate to the infringer of a Plaintiff's copyright, and merely identifying the individual that pays the internet bill associated with a particular IP address does not identify the individual that infringed a copyright via that IP address.  As the court in *SBO Pictures, Inc.* understood, "the ISP subscriber to whom a certain IP address was assigned may not be the same person who used the internet connection for illicit purposes.  *SBO Pictures, Inc.*, 2011 WL 6002620, at *3; Another court noted (in a case involving the exact Plaintiff as the instant matter):

> "In its motion, Plaintiff redefines "Defendants" in a manner that would ensnare unknown numbers of innocent individuals or entities into this matter.  Tucked away in a footnote, Plaintiff discreetly attempts to expand "Defendants" for purposes of this expedited discovery request to encompass not only those who allegedly committed copyright infringement – proper defendants to Plaintiff's claims – but ISP "Subscriber(s)" over whose internet connection the Work allegedly was downloaded."

*Pacific Century International, Ltd., v. Does 1-101* No. C-11-02533, 2011 WL 5117424 at *2 (N.D. Cal. Oct. 27, 2011).

Plaintiff's present counsel has all but admitted that the requested discovery cannot identify the individual who infringed Plaintiff's copyright.  Mr. Gibbs, attorney for Plaintiff herein, also represented the plaintiff in Boy Racer v. Does 1-52.   The presiding judge in that matter severed Does 2-52, but granted expedited discovery as to John Doe #1.  Plaintiff received precisely the ISP subscriber information requested herein.

As described by Judge Grewal:

"To the court's surprise, in its filing and oral argument to the court, Boy Racer admitted that, its previous representations notwithstanding, the subpoenas were not sufficient to "fully identify" "each P2P network user suspected of violating the plaintiff's copyright." Instead, it revealed for the first time that still more discovery was required. **Boy Racer would require nothing less than an inspection of the subscriber's electronically stored information and tangible things, including each of the subscriber's computer and the computers of those sharing his network.**"

*Boy Racer, Inc. v. Does 1-52,* 2011 WL 7402999 (N.D. Cal. 2011) (emphasis added). The requested discovery herein is likewise limited to the name and identifying information of an ISP subscriber. If the requested discovery could not tell Plaintiff who the defendant was in Boy Racer, it is inconceivable that the same information from Movant would be necessary or sufficient to identify the <u>wholly unrelated</u> John Doe sued herein. Moreover, if, in reality, Plaintiff needs nothing less than an inspection of each co-conspirators electronically stored information and tangible things, this court should consider this fact in evaluating the potential prejudice or burden to the unnamed "co-conspirators."

In its opposition to the original motion, Plaintiff states that although it is "sensitive to Movant's concerns regarding innocent subscribers being named in this lawsuit, this concern is unfounded." Doc. 19 at pg. 6. Plaintiff's counsel unequivocally states that "In situations where the subscriber denies infringement and cannot (or will not) identify the true infringer, Plaintiff will not name and serve any individual associated with that IP address until Plaintiff is able to learn more information." *Id.* Prenda Law's history does not support this statement. Indeed, to the extent that Prenda has served *anyone* in connection with these lawsuits, many of these suits include an explicit declaration that Plaintiff *does not know* if the subscriber is the infringer, but that the subscriber is nonetheless guilty of "negligence" for failing to adequately secure its internet connection. A copy of one such complaint, served on Josh Hatfield, is attached hereto as Exhibit __. Additional examples include: 4:12-cv-2049, 5:12-cv-2048; and 4:11-cv-03826 in the Northern District of California. Counsel for Plaintiff has a similar record in this district, and *Pink Lotus Entertainment, LLC v. John Doe and Steve Polan,* 2:11-cv-03073-WBS-KJN is instructive. In that case, Plaintiff's counsel filed suit against "John Doe", and noted that Mr. Polan was the account holder associated with the IP address. Plaintiff sought further ex parte

discovery in the form of a subscriber deposition, in order to determine the identity of the infringer. This request was denied by Judge Newman, and Plaintiff subsequently amended the complaint to likewise accuse the account holder (with whom he had apparently not spoken) of negligence.

**Plaintiff's Response**

Movant argues that Plaintiff cannot use the information sought in its subpoenas to identify the infringers of its copyrighted works. (ECF No. 17-1 at 14-15.) This is not true. Even if a subscriber is not the actual infringer, they are the person in possession of information that will allow Plaintiff to identify the individual who used the subscriber's Internet account to commit the infringement. In the overwhelming majority of situations, the subscribers will admit to the infringement or—out of self interest—will identify the individual responsible for the infringement. In situations where the subscriber denies infringement and cannot (or will not) identify the true infringer, Plaintiff will not name and serve any individual associated with that IP address until Plaintiff is able to learn more information. While Plaintiff is sensitive to Movant's concerns regarding innocent subscribers being named in this lawsuit, this concern is unfounded. Further, if Plaintiff were to be denied the identifying information sought in its subpoenas it would be wholly unable to continue with its lawsuit and protect its copyrighted works from the infringing network in which Movant participated.

**4.  Whether Movant Satisfies the Rule 26 Standards for Granting a Protective Order**

**Movant's Position:**

Rule 26 allows this court to issue a protective order to prevent annoyance, embarrassment, oppression, and undue burden or expense. Indeed, the "[d]iscovery restrictions may be even broader where the target is a non-party. *Dart Indus. Co. v. Westwood Chemical Co.,* 649 F.2d 646, 649 (9th Cir. 1980).

Annoyance, embarrassment, and undue burden and expense represent precisely the weapons that Plaintiff relies upon to secure "settlements" in these mass copyright infringement actions. Indeed, as described by Judge Beeler in the Northern District of California,

> "once the plaintiff obtains the identities of the IP subscribers through early discovery, it serves the subscribers with a settlement demand…the subscribers, <u>often embarrassed about the prospect of being named in a suit involving pornographic movies, settle</u>…Thus, these mass copyright infringement cases have emerged as a strong tool for leveraging settlements – a tool whose efficiency is largely derived from the plaintiffs' success in avoiding the filing fees for multiple suits and gaining early access en masse to the identities of alleged infringers."

*MCGIP v. Does 1-149,* No. C-11-02331, 2011 WL 4352110 at *4 (N.D. Cal., Sept. 16, 2011)(emphasis added). See also *On the Cheap, LLC v. Does 1-5011,* No. 10-4472, 2011 WL 4018258, at *11 (N.D. Cal. Sept. 6, 2011)(stating that plaintiffs' settlement tactics leave subscribers with "a decision to either accept plaintiff's demand or incur significant expense to defend themselves" and finding that this does not "comport with the 'principles of fundamental fairness'"). Other courts have recognized that

> "[p]laintiff would likely send settlement demands to the individuals whom the ISP identified as the IP subscriber. 'That individual – whether guilty of copyright infringement or not- would then have to decide whether to pay money to retain legal assistance to fight the claim that he or she illegally downloaded sexually explicit materials, or pay the settlement demand. **This creates great potential for a coercive and unjust settlement.'"**

*SBO Pictures, Inc. v. Does 1-3036* 2011 WL 6002620 at *3 (quoting *Hard Drive Prods.,* 2011 WL 5573960 at *3)(emphasis added).

Alleged "co-conspirators" can expect to face exactly the same regimen of threatening letters, phone calls, and other unwanted communications from Plaintiff. In fact, after the filing of Movant's original motion, Movant's attorney came into possession of compelling evidence that alleged "co-conspirators" receive exactly the same demands as a Doe defendant. Thereafter, in another matter pending before this Magistrate, the Movant filed a declaration from a prior alleged "co-conspirator" in which she states that she was immediately contacted by Plaintiff's

counsel with a settlement demand after her identifying information was revealed.  Plaintiff made no request for information regarding damages, or the identity of John Doe, or anything else resembling the reasons given in Plaintiff's request for expedited discovery.   A copy of this declaration and the demand letter are annexed hereto as Exhibit D.

As noted above, the Southern District was "at a loss" to understand how the requested names, addresses, and telephone numbers were relevant to Plaintiff's case against the sole named defendant.  Indeed, *it is* hard to understand how this information is relevant to the purposes cited by Plaintiff.  Occam's Razor  (lex parsimonieae) is a principle that states that when one must chose among competing hypotheses, one should select that one which makes the fewest assumptions and thereby offers the simplest explanation of the effect.  Applying this principle to the instant case, it becomes much easier to understand why Plaintiff has sought the names, addresses, and telephone numbers of countless individuals who have no apparent connection to the John Doe being sued.

Simply put, the requested information is precisely the type of information that Plaintiff needs to send demand letters threatening a federal pornography lawsuit unless the subscriber (not the infringer) pay Plaintiff thousands of dollars, and then follow-up with harassing phone calls further threatening litigation unless the subscriber settles.

It is further telling that, as described in the original motion, Plaintiff has variously employed several different methods/proposed justification for its discovery requests, but the requested discovery is always the same: names, addresses, phone numbers, etc.  This is true whether Plaintiff has included the subscriber as a Doe, has identified the subscriber as a "co-conspirator" or whether Plaintiff has sought the information through an attempt at a Rule 27 petition.

In addition to the prospect of harassment, embarrassment, and undue burden and expense described above, this court should issue a protective order because the notice to Movant does not comport with this court's order authorizing expedited discovery and subjects Movant to undue burden.  According to the terms of Rule 26(d)(1), "a party may not seek discovery from any source before the parties have conferred as required by Rule 26(f) except…when authorized

by these rules, by stipulation, or by court order." As Rule 26 requires that pre-service discovery

can only occur when authorized by court order, it stands to reason that pre-service discovery that

<u>does not</u> comport with the court's order should not be allowed.

As previously mentioned, this court's order authorizing discovery specifically stated that

"Subscribers **shall have thirty (30) days** from the date of notice of the subpoena upon them **to**

**file any motions in this court to contest the subpoena**." (emphasis added). However, instead

of the 30 days required by this court's order, Movant was instead notified by letter dated May 8

that he was required to file any motions by May 21 or his information would be released.

Movant was thus provided approximately 13 days, rather than the thirty that are required by this

court's order. Relevant letters were attached to the original motion, and are annexed hereto as

Exhibit E.

Finally, Plaintiff's counsel has admitted that this initial discovery request is only the tip

of the iceberg, and that Movant should expect significant further discovery. Plaintiff's

opposition specifically states that without the discovery, Plaintiff will have no means "of seeking

information from a joint tortfeasor, ***examining digital forensic evidence,*** or assessing the range

of possible defenses" that a subscriber might have. (Doc. 19 at pg. 5)(emphasis added). As

Judge Grewal noted above, to even identify whether a particular subscriber is an actual infringer,

Plaintiff will need to conduct intrusive digital investigation of every device in the subscriber's

home that is remotely capable of connecting to the internet (and perhaps those of subscribers

neighbors, family, visitors, and anyone else that has *ever* connected to the subscriber's network).

This is obviously an oppressive (and expensive) request that would subject anyone to substantial

burden. This burden is clearly "undue" in light of the lack of relevance that the information

would have to the instant suit.


**Plaintiff's Response:**

Movant argues that because Plaintiff is an adult content producer, it would be too

embarrassing and costly to defend himself against Plaintiff's claims. (ECF No. 17-1 at 15-16.)

Leaving aside the fact that Movant is not named a defendant, the "annoyance and

embarrassment" referred to in Rule 26 is not the annoyance of having to defend oneself in court. Instead, it is the annoyance and embarrassment associated with responding to a subpoena. *United States v. Columbia Broadcasting System, Inc.*, 666 F.2d 364, 368-369 (9th Cir. 1982) (explaining that a court may issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, *or undue burden or expense*" experienced from the subpoena). Here, no subpoenas were issued to Movant and Movant cannot plausibly claim any annoyance, embarrassment, oppression or undue burden or expense associated with a third-party's compliance efforts. *See supra* Part B.

Also, it's Motion, Movant makes two arguments claiming that Plaintiff has not complied with the Court's order. (ECF No. 17-1 at 16-17.) First, Movant states that "pre-service discovery can only occur when authorized by court order." (*Id.* at 17.) This argument is peculiar because the subpoenas issued were authorized by a Court order (ECF No. 9) and Movant references that order in the same section. This argument must be rejected.

Second, Movant argues that he was not given adequate time to respond to Plaintiff's subpoena. (ECF No. 17-1 at 17.) Movant correctly states that the Court's order gives subscribers "thirty (30) day from the date of notice of the subpoena upon them to file any motions in this court to contest the subpoena." (*Id.*) (citing ECF No. 9 ¶ 4.) Movant further states that he received a letter stating that he had only 13 days to respond file a motion before his information was released. (*Id.*) This letter was presumably sent from his Internet service provider. It could not have been sent from Plaintiff, as Plaintiff does not know who Movant is. Plaintiff cannot be deemed to have disobeyed a Court order based on something for which it had no involvement. Plaintiff complied with the Court's order in its entirety and Movant's motion for a protective order should be denied.

Respectfully Submitted,

June 14, 2012:


__/S/ Nicholas Ranallo_____
COUNSEL FOR MOVANT (IP ADDRESS 174.66.128.247)
Nicholas Ranallo, Attorney at Law
California Bar # 275016
371 Dogwood Way,
Boulder Creek, CA 95006
(831) 703-4011
Fax: (831) 533-5073
nick@ranallolawoffice.com


_/s/ Brett L. Gibbs  (as authorized on 6/14)_____
Brett L. Gibbs, Esq. (SBN 251000)
Of Counsel to Prenda Law Inc.
38 Miller Avenue, #263
Mill Valley, CA 94941
blgibbs@wefightpiracy.com
*Attorney for Plaintiff*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of June, 2012, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system and served on all of those parties receiving notification through the CM/ECF system.

By:___/s/Nicholas Ranallo

Nicholas Ranallo